IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| LENA KATZENMOYER<br>3302 Arlington Street<br>Laureldale, PA 19605<br><br>     Plaintiff,<br><br>  v.<br><br>BERKS AREA REGIONAL<br>TRANSPORTATION AUTHORITY<br>d/b/a BARTA<br>1700 North Eleventh Street<br>Reading, PA 19604<br><br>     Defendant. | Civil Action No.: _____<br><br><br>**JURY TRIAL DEMANDED** |

---

## COMPLAINT

Plaintiff, Lena Katzenmoyer ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant Berks Area Regional Transportation Authority d/b/a BARTA ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action contending Defendant violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

2. Plaintiff Lena Katzenmoyer is a citizen of the United States and Commonwealth of Pennsylvania, and currently resides at 3302 Arlington Street, Laureldale, PA 19605.

3.  Defendant Berks Area Regional Transportation Authority d/b/a BARTA, is a for-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered office address and principal place of business located within the Commonwealth of Pennsylvania at 1700 North Eleventh Street, Reading, PA 19604.

4.  At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5.  On or about December 4, 2019, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. § 959(a).  Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2021-01490.  Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

6.  By correspondence dated January 19, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff had ninety (90) days to file suit against Defendant.

7.  Plaintiff filed the instant action within the statutory time frame applicable to her claims.

8.  Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

9.  This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. § 951, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district, doing business herein, and the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were fully set forth at length herein.

14. On or about October 20, 2014, Defendant hired Plaintiff in the position of Bus Driver.

15. During her tenure of employment with Defendant, Plaintiff performed her job well, received occasional praise, and no justifiable discipline.

16. By way of background, Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") and was diagnosed on or about January 2, 2019.

17. Specifically, Plaintiff's PTSD stems from witnessing one (1) individual being fatally shot while driving her scheduled route for Defendant.

18. On or about January 7, 2019, Plaintiff notified Defendant of her disability.

3

19. As a result of her PTSD, Plaintiff required a medical leave of absence from January 7, 2019 to March 29, 2019, under the Family and Medical Leave Act ("FMLA").

20. In or around March 13, 2019, Plaintiff contacted Defendant's employee, Laura Hopko ("Ms. Hopko"), regarding when her FMLA expired and to request a brief extension as an accommodation to further treat her disability.

21. By way of response, Plaintiff was directed to contact David Kilmer ("Mr. Kilmer").

22. After multiple failed attempts to contact Mr. Kilmer, Ms. Hopko informed Plaintiff on or about March, 25, 2019, that she required a return to work note from her Doctor.

23. On or about March 28, 2019, in compliance with Defendant's request, Plaintiff provided her Doctor's note to Defendant indicating a return-to-work date of May 13, 2019.

24. Subsequent to Plaintiff's return to work note submission, in or around March 29, 2019, Defendant indicated that Plaintiff must undergo a physical examination and drug screening with Defendant's doctor prior to her return to work.

25. However, Defendant's doctor refused to evaluate her at that time as Plaintiff was still out on leave and not able to return to work.

26. Subsequently, Defendant's doctor notified Defendant and Plaintiff was scheduled for a new appointment with Defendant's doctor on or about May 7, 2019 to clear Plaintiff to return to work, which included a drug examination.

27. Subsequent to her appointment, Plaintiff was notified by Defendant's doctor that she required paperwork from her Doctor regarding medication identified in her drug examination.

28. Immediately, Defendant's doctor notified Defendant that Plaintiff's physical was pending.

29. Shortly thereafter, Defendant's Doctor was provided with a doctor's note, which stated that the medication Plaintiff was prescribed did not prevent her from performing the essential functions of her job.

30. On or about June 7, 2019, Plaintiff was cleared by Defendant's doctor to return to work.

31. On or about June 10, 2019, Plaintiff returned to work to drop off paperwork.

32. Upon her arrival, Defendant informed Plaintiff she was required to complete training prior to driving.

33. Additionally, Plaintiff was informed she required an additional drug examination.

34. Per Defendant's policies, drug examination results are valid for thirty (30) days.

35. Because Plaintiff's prior examination was beyond thirty (30) days before her return to work and completed training, Defendant required Plaintiff attend a second drug screening with Defendant's doctor.

36. Indeed, on or about June 11, 2019, Plaintiff attended a second doctor's appointment per Defendant's request.

37. Prior to returning to work, Defendant required Plaintiff attend a mandatory training before resuming her driving duties.

38. Additionally, Defendant indicated Plaintiff would be contacted when her test results confirmed she could return to work and when she would be scheduled for training.

39. Then, on or about June 14, 2019, Defendant contacted Plaintiff, on her day off, notifying her that her drug examination results have come in and that she has been cleared to return to work.

40. Additionally, Defendant notified Plaintiff that she must report to work within forty-five (45) minutes to complete her mandatory training to be able to cover a bus route on or about June 15, 2019.

41. Due to Defendant's lack of notice, Plaintiff informed Defendant she would not be able to make it within forty-five (45) minutes.

42. That same day, on or about June 14, 2019, Union President, William Frees ("Mr. Frees"), notified Plaintiff that if she did not show up to work that day then Defendant would terminate her.

43. Additionally, Defendant classified Plaintiff's termination as a "voluntary resignation" for refusing to report to work, as stated on the certified letter Plaintiff received from Defendant on or about June 19, 2019.

44. Given the circumstances and timing, it is believed and therefore averred that Defendant terminated Plaintiff's employment because of her actual and/or perceived disabilities, because Defendant regarded Plaintiff as disabled, and in retaliation for her requests for an accommodation in connection thereto, in violation of the ADA and PHRA.

45. At the time of her unlawful termination, Plaintiff was qualified for her position.

46. Upon information and belief, at the time of her unlawful termination, Defendant had a continuing need for the job duties and responsibilities previously performed by Plaintiff.

47. At the time of her unlawful termination, Plaintiff was entitled to and/or currently on leave under the FMLA for her disabilities.

48. Defendant willfully violated the provisions of the FMLA by terminating Plaintiff's employment after Plaintiff disclosed her need for leave in connection with her disabilities.

49. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, *et seq.***
**DISCRIMINATION AND RETALIATION**

50. Paragraphs 1 through 49 are hereby incorporated by reference as though the same were fully set forth at length herein.

51. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

52. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

53. Plaintiff's PTSD constitutes a disability within the meaning of the ADA in that it substantially impairs her ability to engage in major life activities.

54. Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation.

55. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, and ultimately terminating Plaintiff's employment on the basis of her actual and/or perceived disabilities, past record of impairment, such disabilities Defendant regarded Plaintiff as having, and in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto.

56. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct od Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive and/or compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

### COUNT II
### PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951, *et seq.*
### DISCRIMINATION AND RETALIATION

57. Paragraphs 1 through 56 are hereby incorporated by reference as though the same were fully set forth at length herein.

58. Plaintiff is a qualified individual with disabilities within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to her PTSD, which substantially limit Plaintiff's ability to perform major life activities.

59. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

60. It is believed and therefore averred that Defendant, through its agents, officers, servants, and/or employees, has violated the PHRA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, and ultimately terminating Plaintiff's employment on the basis of her actual and/or perceived disability, past record of impairment, and in retaliation for her requests for reasonable accommodations in connection thereto.

61. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

62. The conduct described above constitutes a violation of the PHRA and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances.

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages a set forth by federal law.

## COUNT III
## THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601, *et seq.*
## INTERFERENCE AND RETALIATION

63.     Paragraphs 1 through 62 are hereby incorporated by reference as though the same were fully set forth at length herein.

64.     Defendant employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

65.     Plaintiff was an eligible employee under the FMLA and entitled up to twelve (12) weeks of unpaid leave for her serious health condition.

66.     Plaintiff provided adequate notice to Defendant of her need for medical leave by giving notice as soon as she became aware of the need for leave and as soon as was practicable, pursuant to 29 U.S.C. § 2612(e).

67.     Defendant willfully violated the FMLA by: (a) terminating Plaintiff in retaliation for requesting and seeking leave under the FMLA; and (b) interfering with Plaintiff's rights to protected leave under the FMLA.

68.     The aforementioned actions of Defendant constitute interference and retaliation under the FMLA.

69.     As a result of Defendant's actions, Plaintiff has suffered significant damages.

70. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00):

B. Liquidated damages;

C. Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

Case 5:21-cv-01632-JLS   Document 1   Filed 04/06/21   Page 12 of 13

          **MURPHY LAW GROUP, LLC**

   By: *s/ Sarah Manning, Esq*
      Sarah Manning, Esq.
      Michael Murphy, Esq.
      Eight Penn Center, Suite 2000
      1628 John F. Kennedy Blvd.
      Philadelphia, PA 19103
      TEL: 267-273-1054
      FAX: 215-525-0210
      smanning@phillyemploymentlawyer.com
      murphy@phillyemploymentlawyer.com
      *Attorneys for Plaintiff*

Dated: April 6, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.